# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL J. RILEY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 11 C 3771 |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On April 6, 2009, Michael J. Riley ("Riley") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("SSA" or "the Act"). Riley claimed to be suffering from diabetes, high blood pressure and back pain, alleging an onset date of October 1, 2005. A DIB claimant must prove that he was disabled on or before the date his insured status expired, *see* 42 U.S.C. §§ 416, 423, and Riley was insured through December 31, 2006. There is no such requirement for SSI claimants. *See* 20 C.F.R. § 416.202. Riley alleges that his disability began on October 1, 2005, and so, the ALJ considered whether Riley had been disabled on October 1, 2005, the alleged date of onset, or through the date of decision, August 31, 2010. The ALJ considered Riley's medical treatment records but there was no opinion evidence from treating or examining physicians. (Admin. R., at 25). The ALJ concluded

that at the time of decision, on August 31, 2010, Riley had several severe impairments: diabetes mellitus with neuropathy in the feet; obesity; hypertension; right shoulder tendinitis; and lumbar radiculopathy. (*Id.* at 19). However, the ALJ found that these impairments were either not present or not severe prior to the date last insured of December 31, 2006. (*Id.* at 20). Despite finding several severe impairments, the ALJ concluded that Riley did not have an impairment or combination of impairments that met or was equivalent to one of the impairments listed in the SSA. (*Id.* at 20). The ALJ concluded that Riley had the ability to perform the full range of sedentary work. After the Appeals Council denied Riley's request for review on April 26, 2011, Riley filed the instant suit, claiming that the ALJ erred in concluding that he was not disabled and in denying his applications for DIB and SSI. The Commissioner and Riley have filed cross-motions for summary judgment. For the reasons explained below, the Commissioner's motion is granted and Riley's motion is denied.

Under 42 U.S.C. § 405(g), a court's review is limited to determining "whether the final decision of the Secretary is both supported by substantial evidence and based on the proper legal criteria." *Scheck v. Barnhart*, 357 F.3d 697, 677 (7th Cir. 2004). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

Riley attacks the ALJ's decision on several grounds, focusing primarily on the ALJ's credibility determination. I will overturn the ALJ's credibility finding "only if it is patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)). Plaintiff first attacks the ALJ's use of boilerplate in assessing Riley's credibility. It is true that the ALJ utilized boilerplate in the portion of the decision addressing Riley's credibility and that the Seventh Circuit has criticized the use of such boilerplate in the cases cited by plaintiff. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 644-46 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 921-22(7th Cir. 2010). But the ALJ did not rely solely on boilerplate. Instead, the ALJ gave specific reasons for her credibility determination, and each of the reasons given is supported by the record. Specifically, the ALJ determined that Riley was not credible based on the lack of limitations in the medical evidence, the routine and conservative nature of medical treatment, Riley's non-compliance with prescribed medication and treatment recommendations, the range of daily activities reported by plaintiff, and a lack of physical and clinical abnormalities. (Admin. R., at 25). Plaintiff

alleges that each of the ALJ's proffered reasons for finding Riley not credible is flawed; I will address each in turn.

The ALJ first notes that the "medical evidence as a whole does not indicate limitations greater than those in the residual functional capacity." (*Id*.). Elsewhere in the decision, the ALJ recognizes that Riley cannot perform "more than frequent overhead reaching" (*Id.* at 21), but states that there is no evidence in the medical record and no medical opinion indicating that plaintiff has other limitations. (*Id.* at 25). Indeed, plaintiff did not submit any medical opinion evidence that would support his claims of further limitations and disability. The ALJ also noted that Riley had testified that he must keep his legs elevated during the day but found that there was no such need documented in the medical record. (*Id.* at 21). This is borne out by the medical record, which documents pedal edema (*Id.* at 441) and swelling of the ankles (*Id*. at 445) but does not otherwise indicate a need to keep the legs elevated.

The ALJ also cites the conservative nature of plaintiff's treatment and his non-compliance with treatment recommendations as reasons for finding him not credible. Relying on *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009), plaintiff argues that the ALJ impermissibly relied on the fact that Riley's condition was not treated with insulin to conclude that his symptoms were less serious. But unlike *Myles*, where the record showed that the

plaintiff had been informed on only one occasion that she "*may need to start insulin*," 582 F.3d at 675 (emphasis added), Riley's doctors have told him repeatedly that the only way to control his diabetes is to start insulin. (Admin. R., at 285, 289, 290, 294, 430, 438). When the ALJ asked Riley why he refused insulin, he stated only that he wanted to maintain his commercial driver's license. (*Id.* at 50-51). While the ALJ does not explicitly make the connection between Riley's proffered reason and her conclusion, the desire to maintain a commercial license is not at all like an inability to pay or a documented adverse reaction to a medication, both of which the Seventh Circuit has found to explain noncompliance such that it did not adversely affect a plaintiff's credibility. *Myles*, 582 F.3d at 677 ("Inability to pay for medication or negative side effects from medication may excuse failure to pursue treatment"); *Craft v. Astrue*, 539 F.3d at 678-79 ("infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment" but "[a]n inability to afford treatment is one reason that can provide insight into the individual's credibility"). The medical record also contains ample evidence of Riley's failure to comply with other treatment recommendations or prescriptions. (Admin. R., at 285-87, 291, 293, 456).

Additionally, the ALJ found that the range of daily activities Riley reported were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.* at 25). Elsewhere, the ALJ notes that Riley testified that he prepares meals, cares for his son, completes one household chore each day, socializes with neighbors, shops for groceries with his son's help, drives, uses a computer for about 20 minutes at a time, and suffers from interrupted sleep. The Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Craft*, 539 F.3d at 680 (quoting *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)). It is not immediately clear how the ALJ evaluated Riley's self-reported activities in terms of reaching her credibility determination, but given the other reasons cited by the ALJ in reaching her credibility determination and the fact that those reasons are supported by the record, it does not appear that the ALJ placed "undue weight" on plaintiff's activities. At most, the ALJ's analysis here was a harmless error because the other reasons cited would support an adverse credibility finding even without considering Riley's daily activities.

Finally, the ALJ cited a "lack of physical and clinical abnormalities" as another reason for determining Riley to not be

credible. On this point, among others, plaintiff alleges that the ALJ was impermissibly "playing doctor" by making an independent medical finding.[1] In his reply, plaintiff relies on *Liskowitz v. Astrue*, 559 F.3d 736, 741 (7th Cir. 2009), for the proposition that conclusions based on "clinical and laboratory findings" are "quintessentially a matter for medical judgment." *Id.* In *Liskowitz*, the Seventh Circuit discussed whether the ALJ's refusal to credit the opinion of a treating physician led the ALJ to play doctor. *Id.* The court noted that "an ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion." *Id.* (quoting *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)). Here, the ALJ did not discredit any medical opinion because plaintiff did not offer any medical opinion evidence. In addition, plaintiff has not shown that the ALJ failed to consider all of the medical evidence. The ALJ discussed Riley's painful diabetic neuropathy and recognized it as such. (Admin. R., at 21-22). She also considered the symptoms Riley suffers as a result of his diabetes, obesity, high

---

[1] Plaintiff also argues that the ALJ was playing doctor when she found that Riley's conservative treatment and refusal to start insulin negatively impacted his credibility. But the ALJ did not make an independent medical finding in her conclusions on this point. As discussed above, the ALJ correctly relied on the objective evidence in the medical record and considered plaintiff's offered reason for not starting insulin. *See Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010) (holding that, under the facts of that case, the ALJ had "reasonably concluded" that the that the plaintiff was not credible "based on objective evidence [including noncompliance] and common sense").

blood pressure, right shoulder tendinits, and lumbar radiculopathy, including pain. (*Id.* at 22-25). Contrary to plaintiff's allegations, the ALJ did not disregard Riley's complaints of painful symptoms nor did she play doctor. Looking at plaintiff's treatment records, and the symptoms and limitations described therein, the ALJ reasonably concluded that the medical evidence did not support plaintiff's claimed disabling pain and limitations. In fact, the ALJ took plaintiff's symptoms of pain into consideration when she limited him to sedentary work but determined that Riley is not disabled on account of his pain or other symptoms. The ALJ also relied on the opinions of non-treating and non-examining physicians from the State Disability Determination Services, most notably Dr. Francis Vincent, who completed the Physical Residual Functional Capacity Assessment that support the ALJ's conclusions. (*See, e.g.*, Admin. R., at 324, 330). As such, the ALJ did not impermissibly play doctor in making her credibility determination.[2] Furthermore, I conclude that, based on the

---

[2] In arguing that the ALJ impermissibly played doctor, plaintiff also contends that the ALJ should have had a medical expert testify at the hearing, again making much of the fact the ALJ's conclusion that Riley was non-compliant with medical advice by not starting insulin was allegedly not supported by a medical opinion. This line of argument is unpersuasive. An ALJ must "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled." *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *see also* 20 C.F.R. § 404.1527(e)(2)(iii); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (finding that where "the evidence was

8

medical evidence, the ALJ "built an accurate and logical bridge between the evidence and the result," *Castile*, 617 F.3d at 929 (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)), and was not "patently wrong" in finding that Riley was not credible.

Plaintiff makes one further argument in support of his position that the ALJ's decision must be overturned. Without citing to the record or to a specific deficiency in the ALJ's decision, plaintiff maintains that the ALJ's conclusion that Riley was capable of performing sedentary work is not supported by substantial evidence. Had the ALJ relied solely on Riley's daily activities, plaintiff's argument might be more persuasive. But she did not use Riley's daily activities as the sole basis for her conclusion that plaintiff is capable of performing sedentary work. Most significantly, the ALJ also relied on the lack of restrictions placed on Riley by his treating doctors, her finding that Riley was not credible, and the opinions of non-

---

adequate for the ALJ to find [the plaintiff] not disabled, [...] the ALJ acted within his discretion in deciding not to call a medical expert"). An ALJ is not required to call a medical expert simply because a claimant has failed to meet his burden of demonstrating that he suffers from an impairment listed in the SSA. Here, the record provided an adequate basis for the ALJ's conclusions without the input of a medical expert. Further, as discussed above, the medical record is replete with evidence that Riley's doctors believed that insulin was the *only* way that he could control is diabetes.

examining physicians.  These provide substantial evidence for the ALJ's conclusion.

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 10, 2012